UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JEFFREY HERRING,

                            Plaintiff,

   -against-

CITY OF NEW YORK; GREGORY JEAN-BAPTISTE; JEAN GAILLARD; EDWARD BABINGTON; VASSILIOS AIDINIOU; and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                            Defendants.
-----------------------------------------------------------------------X

***COMPLAINT AND JURY DEMAND***

ECF CASE

Docket No.
1:15-cv-276

Plaintiff Jeffrey Herring, by his attorney Joseph Indusi, Esq. of London Indusi, LLP, for his complaint against the above Defendants alleges as follows:

**PRELIMARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

2. The claim arises from a June 4, 2013 incident in which Defendants, acting under color of state law, stopped, detained and unlawfully imprisoned Mr. Herring for allegedly possessing a firearm. On the date in question, Mr. Herring was not violating any law, ordinance or statute. He did not possess any weapon, contraband or engage in any illegal activity. Despite Mr. Herring's innocence, the Defendants fabricated and falsified evidence to have him arrested and prosecuted. After spending approximately eight (8) consecutive days in custody directly following his unlawful arrest, Mr. Herring was able to make bail with the help of his family. The Defendants,

1

however, continued to maliciously have Mr. Herring prosecuted for approximately nineteen months requiring him to make approximately sixteen (16) Court appearances before the case against him was finally dismissed by prosecutors. The prosecutors, at the time of dismissal, claimed they could not meet their burden of proof at trial and that an investigation into the officers involved was underway. The dismissal also came after the prosecutor and police were unable to produce an alleged confidential informant for an ex parte, pre-trial examination by the State Supreme Court trial judge.

3. Mr. Herring brings this action not only to challenge the unlawful conduct of the individual Defendants but also to challenge the reckless disregard of Defendants' supervisors for failing to adequately train, supervise, discipline and control the Defendants. Additionally, Mr. Herring seeks damages for the City's deliberate indifference to the NYPD's policy, practice and/or custom of inadequate training, supervision, discipline and control of its officers who violate the constitutional rights of citizens and engage in police misconduct.

4. The NYPD's policies, practices and/or customs, along with the actions of the individual Defendants and inaction of supervisors, violated Plaintiff's constitutional rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, a declaratory judgment, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

**JURISDICTION**

5. This action arises under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988.

6. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4),

2201 and 2202.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8. Plaintiff Jeffrey Herring ("Plaintiff" or "Mr. Herring") resided at all times in Kings County, in the City and State of New York.

9. The Defendant City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.

10. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives and supervisory officers as well as the individually named Defendants herein.

11. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12. Defendant Jean Baptiste ("Jean-Baptiste") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Jean-Baptiste was, at the time relevant herein, a Detective under Shield # 16736 in the 67th Precinct. Defendant Jean-Baptiste is sued in his individual and official capacity.

13. Defendant Jean Gaillard ("Gaillard") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Gaillard was, at the time relevant herein, a Police Officer under Shield # 16943 in the 67th Precinct. Defendant Gaillard is sued in his individual and official capacity.

14. Defendant Edward Babington ("Babington") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Babington was, at the time relevant herein, a Lieutenant, Tax # 932283 in the 67th Precinct. Defendant Babington is sued in his individual and official capacity.

15. Defendant Vassilios Aidiniou ("Aidiniou") was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Aidiniou was, at the time relevant herein, a Sergeant in the 67th Precinct. Defendant Aidiniou is sued in his individual and official capacity.

16. At all times relevant Defendants John and Jane Doe 1 through 10 were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD. Plaintiff does not know the real names and/or shield number of Defendants John and Jane Doe 1 through 10.

17. At all times relevant herein, Defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

18. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## **FACTUAL CHARGES**

19. On June 4, 2013, Mr. Herring had been enjoying one of the "nicest days" of summer 2013, playing with his dog Snowy, and then running several errands.

20. Mr. Herring started the day by taking Snowy to Lincoln Terrace Park to play for a couple of hours.

21. After dropping Snowy back off at the apartment and taking his bike to the local bike shop to fix a flat, Mr. Herring biked to "Bargain Land" located at 2828 Church Avenue, then to "C Town Supermarket" located at 146 E. 98th Street, and then the "Dollar Store" located at 9729 Kings Highway to buy groceries and toiletries.

22. Mr. Herring bought food and drinks, size 9 slippers, Gillette razors, an oral B toothbrush, a black du-rag, and Tide.

23. Upon returning home to 35 E. 94th Street at approximately 4:30pm, Mr. Herring parked his bicycle with his shopping bags in front of his multi unit apartment building and before walking inside, gave his friend a call.

24. Mr. Herring was on the phone with his friend when Gaillard, Jean-Baptiste and 2 unidentified Defendants suddenly approached and told Mr. Herring to hang up.

25. Mr. Herring was not violating any law, ordinance or statute and did not possess any weapon or contraband justifying his illegal detention, arrest and imprisonment.

26. Mr. Herring was then immediately handcuffed by Defendant Gaillard and taken to the police car without explanation.

27. Despite questioning the Defendants, demanding to know why he was being arrested, the Defendants ignored Mr. Herring.

28. Mr. Herring did not witness the recovery of any firearm or any other contraband.

29. All of the items Mr. Herring had purchased, other than the food, which was left on the sidewalk, were vouchered for safekeeping upon his arrest by Defendant Gaillard.

30. The only other property found on Mr. Herring was a cell phone, his bicycle, and keys. On the way to the precinct, Defendant Gaillard and Jean-Baptiste asked Mr. Herring whether he was West Indian because "they commit a lot of crime."

31. After removing Mr. Herring from the scene, the police drove around for approximately forty-five (45) minutes circling around the police precinct before bringing Mr. Herring into the station for processing.

32. Once at the precinct, Mr. Herring was taken to a room by Gaillard, Jean-Baptiste and 2 unidentified Defendants and asked to strip nude in a room.

33. After having stripped, Gaillard, Jean-Baptiste and 2 unidentified Defendants unlawfully strip searched Mr. Herring.

34. Mr. Herring was photographed by an unidentified Defendant using his cellphone during the nude strip search.

35. No contraband was recovered during this invasive and unlawful strip search.

36. Mr. Herring was then placed in an interrogation room where he was questioned on and off for three to four hours by a rotating team of unidentified Defendants.

37. The officers pressed Mr. Herring for information about drugs and guns in his neighborhood, threatening to charge him and put him away "for years" if he did not give them the information they sought.

38. Mr. Herring had no information to provide.

39. Mr. Herring told an unidentified Defendant at the 67th Precinct on June 4, 2013 at approximately 8:30p.m. that he did not have a gun on him and does not know why he is being

charged.

40. Mr. Herring was transported to central bookings to be processed.

41. While Plaintiff was in central booking, Defendants, acting in concert and with malice, conveyed false information to prosecutors in order to have Plaintiff prosecuted for Criminal Possession of a Weapon in the 2nd Degree stemming from an allegation that a firearm was recovered in a bush nearby to where Mr. Herring was standing in the front of 35 E. 94th Street on June 4, 2013 at approximately 4:45pm.

42. Mr. Herring spent approximately 24 hours unlawfully confined until he was arraigned on those charges.

43. Mr. Herring was then arraigned and bail was set in the amount of $3500.

44. Bail was set as a result of the falsified information provided by Defendants to the Court and prosecutor.

45. Mr. Herring remained in custody for approximately eight (8) days before making bail on June 12, 2013.

46. In addition to providing false oral and written reports, Defendants gave false testimony before the grand jury.

47. After making bail, Mr. Herring, while free, suffered the emotional consequences of facing a potential 15-year jail sentence, if convicted.

48. Mr. Herring took and passed a polygraph examination denying his possession of any firearm on June 4, 2013.

49. There was no DNA or fingerprint evidence connecting Mr. Herring to the weapon claimed to be recovered near him.

50. During the course of approximately 19 months, Mr. Herring returned to various

Courtrooms at least 16 times before his case was dismissed on the prosecutor's motion.

51. Throughout this time, the Defendants continued to convey false information about Mr. Herring to the prosecutors and the Court.

52. Babington signed off on police paperwork as a supervisor of Gaillard and Jean-Baptiste.

53. Adiniou signed off on police paperwork as a supervisor of Gaillard and Jean-Baptiste with regards to the disbursement of a tip.

54. On January 15, 2015, Mr. Herring went back to Court the last time where the case was dismissed and sealed.

55. Mr. Herring's case was dismissed by prosecutors after they claimed in Court they could not meet their burden of proof after considering information provided by Mr. Herring's counsel and the District Attorney's own investigation.

56. Upon information and belief, the Kings County District Attorney's Office is investigating the Defendants.

57. Upon information and belief, the NYPD Internal Affairs Bureau is investigating the Defendants.

58. For the approximately 19 months following the incident Mr. Herring suffered emotional distress as a result of fear of retaliation by the Defendants.

59. For the approximately 19 months following the incident Mr. Herring suffered emotional harm, sleep trouble and distress as a result of the pendency of this case, which had the potential of exposing him to a 15 year prison sentence.

60. Even after the case has been dismissed, Mr. Herring continues to suffer emotional harm as a result of the fear and humiliation stemming from the Defendants constitutional violations.

61. During all of the events described, the individual Defendants acted maliciously and with intent to injure Plaintiff.

62. At all times relevant hereto, Defendants were involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Plaintiff without probable cause.

63. Independent investigation has revealed at least two other gun arrests and recoveries by the named Defendants within a year of Mr. Herring's arrest, both of which bear uncanny resemblance to the implausible facts and circumstances underlying Mr. Herring's arrest and prosecution.

64. Further investigation has also revealed another strikingly similar case of misconduct in 2007 by Babington, a supervisor in the 67th Precinct.

65. Upon information and belief, many other individuals have been victims of wrongful arrests and prosecutions as a result of Gaillard, Jean-Baptiste, Babington and Aidiniou (the "Team") malfeasance.

66. On February 26, 2009, Jean-Baptiste pled guilty to N.Y. V.T.L. § 1192(1), Driving While Ability Impaired, after being arrested for drunk driving following a collision, was sentenced to a fine, license suspension and drunk driving program, was suspended for 30 days by the NYPD for this incident, and demoted from second grade to third grade detective. This incident stemmed from not just a claim of Driving While Intoxicated but also a sworn allegation that Jean-Baptiste left the scene of the accident and tried to conceal his car in a parked trailer.

67. On March 10, 2011, Jean-Baptiste was sued for allegedly stealing $200 from a crime suspect.

68. In 2007, Jean-Baptiste was suspended for 30 days by the NYPD for insubordination

following an altercation with a superior officer.

69. On October 24, 2013, in a gun suppression hearing in the case of People v. E.M., a Kings County Supreme Court Justice suppressed a firearm allegedly recovered by the same team because he found Jean-Baptiste to be incredible as a matter of law.

70. The facts underlying the arrest and prosecution of E.M. eight months prior to Mr. Herring's arrest are nearly identical to those in the instant matter.

71. As in this case, the team in E.M. did not radio for backup or call any one at the precinct despite observing a man in a high crime area with a firearm, did not make the gun safe for evidence collection, did not contact the Evidence Collection Team ("ECT") to swab the gun and other evidence for fingerprints, DNA, or other forensic evidence, did not voucher the bag in which the gun was allegedly recovered, did not swab or dust the bag for forensic evidence, did not send any forensic evidence to the Office of the Chief Medical Examiner ("OCME") and made no effort to secure camera footage.

72. The Judge rejected Jean-Baptiste's testimony out of hand and suppressed the gun.

73. The case against E.M. was subsequently dismissed and sealed.

74. Pursuant to further investigation, a near-identical false arrest occurred at the hands of the individually named Defendants, only this man was incarcerated for the entire ten-month pendency of the case.

75. In another case, J.H. was charged with Criminal Possession of a Weapon in the Second Degree, P.L. 265.03(3), and related charges.

76. Upon information and belief, the police officers involved in the J.H. case were Babington, Aidiniou, and Jean-Baptiste.

77. As in this case, Babington was the ranking superior officer, who approved and signed

off on all team paperwork.

78. J.H. was arrested on July 16, 2012 eleven months prior to Mr. Herring's arrest.

79. Yet again, there was no physical evidence to tie J.H. to the firearm.

80. As in the case of E.M., the Judge rejected the credibility Jean-Baptiste, pointing out the dubiousness of his claimed observations and the subsequent actions (or inaction) of the team: "Supposedly this Defendant doesn't see the police coming but elects out of nowhere to take the object out of his pants pocket and dump it in a garbage can even though he didn't see the police. And the police officer based on the shape of the object knew it was a gun. They then took him into custody before doing any further investigation. . . . I find it incredible that they thought it was a gun. It comes down to credibility whether I believe what this officer was able to see what he saw and reach the conclusions that he did . . . ."

81. Prior to the Judge's decision, the prosecution returned with an offer of a plea of guilty to Attempted Criminal Possession of a Weapon in the Third Degree, with the promised sentence of the equivalent of time already served.

82. J.H. pled guilty and walked out of the Courtroom that day.

83. Pursuant to a search on the federal PACER Case Locator Index, the existence of at least three probative civil rights claims brought pursuant to 42 U.S.C. § 1983 against Babington were discovered.

84. One of these claims, Cross v. City of New York, involving the alleged recovery of a firearm from Mr. Cross based on information allegedly provided by a Confidential Informant to Babington, was settled after a U.S. District Court Judge suppressed the gun and found Babington had committed perjury.

85. The facts and circumstances underlying Mr. Cross's arrest and prosecution also bear

uncanny resemblance to the instant matter.

86. Following a three-day suppression hearing between June and September 2008, the Judge granted Mr. Cross's motion to suppress the evidence because she found the testimony of Babington and the other officers to be "incredible" as a matter of law.

87. In open Court, the Judge stated: "The bottom line here is that the testimony of the three police officers who testified here was just incredible, and I say 'incredible' as a matter of law. Frankly, in my view I believe these officers perjured themselves. In my view there is a serious possibility that some evidence was fabricated by these officers. . . . It's disturbing. It's disturbing. . . . These officers are coming here before the Court and committing perjury."

88. The Court went so far as to instruct the United States Attorney's Office to "look into this matter and make a determination as to whether or not charges should be brought against these officers for perjury. This is shameful conduct."

89. The case against Mr. Cross was ultimately dismissed on January 8, 2010.

90. The individually named Defendants were under the command of the 67th precinct on the date of the incident.

91. Upon information and belief, the individually named Defendants were abusing the "Operation Gun Stop" program to enrich themselves at the expense of violating Plaintiff's constitutional rights.

92. Supervisors in the NYPD were aware of the Defendants' past misconduct, yet failed to train, supervise, discipline and control the Defendants.

93. Upon information and belief, Supervisors of the Defendants failed to adequately train, supervise, discipline and control other teams of officers like the individually named Defendants herein.

94. Defendant City has a policy, practice and/or custom which inadequately addresses the training, supervision, discipline and retention of NYPD police officers and supervisors engaged in unconstitutional practices and misconduct including falsifying evidence.

95. The City of New York was aware of the Defendants' past misconduct, yet failed to train, supervise, discipline and control the Defendants.

96. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages, a violation of his rights pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendment of the United States Constitution, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation.

**FIRST CAUSE OF ACTION**
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

97. The above paragraphs are here incorporated by reference as though fully set forth.

98. The Defendants wrongfully and illegally arrested, detained and imprisoned Plaintiff.

99. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

100. At all relevant time's Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

101. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

102. All of this occurred without any illegal conduct by Plaintiff.

103. Plaintiff's criminal Court case was dismissed and sealed.

104. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

105. The above paragraphs are here incorporated by reference as though fully set forth.

106. By their conduct, as described herein, Defendants are liable to Plaintiff for the violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

107. Defendants, acting with malice, initiated a prosecution against Plaintiff and caused him to be prosecuted.

108. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that there was no basis for Plaintiff's arrest, yet Defendants continued with the prosecution, which was resolved in Plaintiff's favor.

109. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

110. The above paragraphs are here incorporated by reference as though fully set forth.

111. The individual Defendants created false evidence against Plaintiff, to wit, sworn documents and testimony alleging that Mr. Herring possessed a weapon.

112. The individual Defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

113. In creating false evidence against Plaintiff, and in forwarding false information to

prosecutors, the individual Defendants violated Plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

114. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Illegal Strip Search Under
42 U.S.C. § 1983 Against Individual Defendants

115. The above paragraphs are here incorporated by reference as though fully set forth.

116. The Defendants violated the Fourth and Fourteenth Amendments because they unlawfully subjected Plaintiff to a strip search without legal justification.

117. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

118. The above paragraphs are here incorporated by reference as though fully set forth.

119. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

120. Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

121. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Supervisory Liability Under
42 U.S.C. § 1983 Against Individual Defendants

122. The above paragraphs are here incorporated by reference as though fully set forth.

123. Defendants and their supervisors had actual or constructive knowledge that subordinate Defendants were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff.

124. Defendants and their supervisor's response to this knowledge was so inadequate as to show a deliberate indifference to or tacit authorization of the offensive practices of Defendant subordinates.

125. Defendants and their supervisors failed to train, supervise, discipline and control Defendant subordinates with a history of misbehavior.

126. Defendants and their supervisors acted with deliberate indifference or knowing, willful, or reckless inaction to Plaintiff's constitutional rights.

127. Defendants' supervisor's inaction was a direct and proximate cause of the violation of Plaintiff's constitutional rights and damages described hereinbefore.

**SEVENTH CAUSE OF ACTION**
Municipal Liability Under
42 U.S.C. § 1983 Against City of New York

128. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

129. The City of New York has a policy, practice and/or custom through which its NYPD employees are inadequately trained, supervised, disciplined and retained.

130. The City of New York is liable for its deliberate indifference to the consequences of this policy, practice and/or custom, and for failing to train, supervise, discipline and/or retain those employees who engage in unconstitutional activity and engage in misconduct.

131. The City of New York is liable for the decisions of its final policymakers to create,

promulgate and perpetuate this policy, practice and/or custom.

132. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

- a) A declaratory judgment that Defendants violated Plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and 42 U.C.S. § 1983;
- b) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;
- c) Awarding Plaintiff punitive damages in an amount to be determined by a jury;
- d) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;
- e) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and
- f) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 19, 2015
      Brooklyn New York

      Respectfully submitted,

        /s/ Joseph Indusi, Esq.
      *Joseph Indusi, Esq.*
      Bar Number: JI6499
      Attorney for Mr. Herring
      London Indusi LLP
      186 Joralemon Street, Suite 1202
      Brooklyn, NY 11201
      (718) 301-4593 – Phone
      (718) 247-9391 – Fax
      Joe@LondonIndusi.com